Appellant-defendant Clifton White, III, appeals from the denial of his petition for postconviction relief. We affirm.
 I.
White began dating Heather Kawczk in 1992. In 1995, White and Heather moved into an apartment together. Shortly thereafter, the couple began arguing and White became possessive and violent.
During this time, Heather worked at a Kentucky Fried Chicken restaurant with Michael Thorpe and his mother Deborah Thorpe. As Heather's relationship with White deteriorated, she began to develop a relationship with Michael. In December 1995, without informing White, Heather moved into the Thorpe home with Michael and his parents.
In an attempt to find Heather, White confronted Heather's parents, Dennis and Julie Schrey. Upon learning that Heather was living with Michael Thorpe, White began to harass Heather at work.
Heather eventually agreed to have lunch with White. However, instead of taking Heather to lunch, White took Heather back to his apartment where he showed Heather a shotgun and threatened to commit suicide. Heather calmed White down and returned to work.
A few days later, White overdosed on medication and was taken to the hospital. When Heather went to visit him in the hospital, White indicated that he had overdosed as an attempt to win Heather back. Nevertheless, Heather refused to renew their relationship.
On December 24, 1995, White called Heather and asked her to come over to the apartment to collect some of the personal items that she had left behind. Heather refused to go.
That evening, White called Julie Schrey and Deborah Thorpe. After receiving the phone calls from White, Julie picked up Deborah and they drove over to White's apartment intending to collect the rest of Heather's personal items. After arriving at White's apartment, Deborah called Heather at work. Heather still refused to come to the apartment.
While Deborah and Julie were attempting to gather Heather's personal items, White produced a shotgun and shot Julie Schrey in the neck. White then turned to Deborah. White fired the shotgun once at Deborah and missed. As Deborah attempted to escape through the front door of the apartment, White fired the gun at Deborah a second time, striking her in the back. Julie and Deborah both died from their wounds before they were discovered.
After shooting Deborah and Julie, White took his shotgun and drove to the Kentucky Fried Chicken restaurant where Heather was working. White entered the restaurant unarmed and told Heather that he had some of her belongings outside in his car and that she should come out and get them. When Heather refused to go, White went back outside to his car and got the shotgun. White came back into the restaurant with the shotgun and pointed it at Heather. Michael was also working at the restaurant that night. Michael stepped in front of White and told him to leave. White then pointed the shotgun at Michael and shot Michael in the head. Michael survived, but required brain surgery and was in a coma for three months. Michael is now missing a portion of his brain and is deaf in one ear.
After shooting Michael, White exited the restaurant, dropped the shotgun on the sidewalk outside, and went to a friend's house. White told the friend that he had just shot three people and called one of his girlfriends to take him to the police station. At the police station, White turned himself in and gave a full confession.
On September 12, 1996, White was found guilty of murder for the killing of Julie Schrey, guilty of attempted murder for the shooting of Michael Thorpe, and guilty of aggravated murder for the killing of Deborah Thorpe. In relation to the aggravated murder of Deborah Thorpe, White was also found guilty of two death penalty specifications: (1) "[t]he offense was committed for the purpose of escaping detection, apprehension, trial, or punishment for another offense committed by the offender," R.C.2929.04(A)(3), and (2) "the offense at bar was part of a course of conduct involving the purposeful killing of or attempt to kill two or more persons by the offender," R.C. 2929.04(A)(5). As such, White was subject to the death penalty. R.C. 2929.02(A); R.C.2929.03(C)(2)(a)(i).
After hearing evidence in mitigation of the imposition of the death penalty pursuant to R.C. 2929.03(D)(1), the jury found that the aggravating circumstances outweighed the mitigating factors and recommended that White be sentenced to death. The trial court agreed with the jury's recommendation. On October 31, 1996, White was sentenced to death for the aggravated murder of Deborah Thorpe.
On December 2, 1996, White filed a direct appeal to the Supreme Court of Ohio, which affirmed White's conviction and sentence. State v. White (1999), 85 Ohio St.3d 433.
On October 16, 1997, White filed the petition for postconviction relief that is the subject of this appeal and an accompanying motion for discovery. White's request for discovery was denied on November 20, 1997, and his petition for postconviction relief was denied without a hearing on March 20, 1998. White timely appeals.
White's five assignments of error have been rearranged for ease of discussion.
II.
White's fifth assignment of error states:
 THE TRIAL COURT ERRED IN DENYING PETITIONER'S MOTIONS AND DISMISSING HIS POST CONVICTION PETITION WITHOUT FIRST GRANTING DISCOVERY OR A HEARING.
In State v. Benner (Aug. 27, 1997), Summit App. No. 18094, unreported, we noted that this Court has repeatedly held that there is no right to conduct discovery in postconviction relief proceedings. See, also, State v. Fox (May 16, 1997), Wood App. No. WD-96-031, unreported. Once again, there is no right to discovery in postconviction relief proceedings. Therefore, the trial court's denial of the motion for discovery is affirmed.
In regard to the trial court's failure to hold an evidentiary hearing prior to denying White's petition for postconviction relief, R.C. 2953.21 states:
 (C) * * * Before granting a hearing on a petition filed under division (A) of this section, the court shall determine whether there are substantive grounds for relief. In making such a determination, the court shall consider, in addition to the petition, the supporting affidavits, and the documentary evidence, all the files and records pertaining to the proceedings against the petitioner * * *. * * *
* * *
 (E) Unless the petition and the files and records of the case show the petitioner is not entitled to relief, the court shall proceed to a prompt hearing on the issues * * *.
Because this statute does not expressly mandate a hearing for every postconviction petition, a hearing is not automatically required. See State v. Jackson (1980), 64 Ohio St.2d 107, 110. "Thus, the pivotal concern is whether there are substantive grounds for relief which would warrant a hearing based upon the petition, the supporting affidavit and the files and records * * *."Id. Because White's other assignments of error discuss whether his petition established substantive grounds for relief, we will address the necessity of an evidentiary hearing in conjunction with his other assignments of error.
III.
White's fourth assignment of error states:
 THE TRIAL COURT ERRED IN DENYING MR. WHITE'S FIFTH GROUND FOR RELIEF AS HE WAS NOT AFFORDED AN ADEQUATE CORRECTIVE PROCESS IN HIS STATE COLLATERAL REVIEW PROCEEDINGS * * *.
Under this assignment of error, White argues: "The State mischaracterize [sic] Mr. White's Fifth Ground for Relief as a complaint pertaining to the page limitations imposed by Crim R. 35 * * *. Appellant's assertion of his due process rights are much broader than an issue of page limitations and should be addressed by this Court." However, in White's fifth ground for relief in his petition for postconviction relief, White merely challenges the page limits imposed by Crim.R. 35:
 The judgment and sentence against Clifton White are void or voidable because the recent amendments to the Ohio post-conviction process violate his constitutional rights to procedural due process which the Ohio and United States Constitutions afford him.
 The amendments by the Ohio Legislature to Rule 35 of Criminal Procedure [sic], which became effective on July 1, 1997, curtail the post-conviction process, rendering it practically devoid of any meaning. * * * Rule 35 (A) now demands that each ground for relief contained in a post-conviction petition cannot exceed three pages. The Staff Notes to the amendment state that the purpose of this change is to "introduce some uniformity in post-conviction relief proceedings and aid in the administration of justice." * * *
* * *
 * * * Because the three-page limit does not afford sufficient due process to capital defendants, the amendments are unconstitutional.
Beyond the page limit imposed by Crim.R. 35, White fails to identify any other "amendment" to the postconviction relief process that allegedly violates his right to due process. As such, this Court will only address the page limit issue that was properly raised in White's petition.
In discussing the constitutionality of page limitations for appellate briefs, the Ohio Supreme Court has noted that "[c]ourts have inherent power to supervise the proceedings before them to ensure the orderly and efficient exercise of jurisdiction. Page limits are a valid exercise of that power." (Citations omitted.)Ziegler v. Wendel Poultry Serv., Inc. (1993), 67 Ohio St.3d 10,22, overruled on other grounds Fidelholtz v. Peller (1998),81 Ohio St.3d 197, 203. In Ziegler, the court of appeals limited the appellant's brief to forty pages. The Ziegler court found that limitation to be constitutional:
 A limit of forty pages was reasonable and afforded [the appellant] ample opportunity to concisely present all of its arguments. The fact that the appellate court required [the appellant] to be succinct does not amount to a denial of due process.
Id. at 23. The Ziegler court also noted that "[e]ven in capital cases, we have upheld page limitations, finding that they force counsel to winnow out weaker arguments and focus on key issues."Id. at 22, citing State v. Davis (1991), 62 Ohio St.3d 326, 352, and State v. Bonnell (1991), 61 Ohio St.3d 179, 186.
The three page limit provided by Crim.R. 35 is reasonable and afforded White ample opportunity to concisely present each of his grounds for relief. Merely requiring a petitioner to be succinct does not amount to a denial of due process. Ziegler, supra, at 23. Moreover, Crim.R. 35 does not place any restriction on the number of grounds for relief that can be alleged. Thus, counsel is not actually forced to "winnow out" any ground for relief. Also, Crim.R. 35 permits a trial court to extend the page limit. White points to nothing in the record where the trial court rejected a request for additional pages. Additionally, because the alleged unconstitutionality of the Crim.R. 35 page limit is unrelated to anything that occurred at trial, it is not cognizable in an action for postconviction relief. See State v. Powell
(1993), 90 Ohio App.3d 260, 271-272; Fox, supra.
White's fourth assignment of error is not well taken.
IV.
White's second and third assignments of error state:
 THE TRIAL COURT ERRED IN DENYING THE SIXTH GROUND FOR RELIEF WHEN APPELLANT SUPPORTED THE CLAIM WITH EVIDENCE DEHORS THE RECORD THAT PRESENTED SUFFICIENT OPERATIVE FACTS THAT THE DEATH PENALTY IS DISPROPORTIONATELY METED OUT IN SUMMIT COUNTY TO THOSE DEFENDANTS WHO ARE ACCUSED OF HOMICIDES OF CAUCASIANS * * *.
 THE TRIAL COURT ERRED IN FAILING TO GRANT RELIEF OR DISCOVERY AND AN EVIDENTIARY HEARING ON THE SEVENTH GROUND FOR RELIEF THAT THE USE OF ELECTROCUTION AS A METHOD OF EXECUTION VIOLATES THE EIGHTH AMENDMENT'S GAURANTEE AGAINST CRUEL AND UNUSUAL PUNISHMENT.
It is well established in Ohio that the doctrine of resjudicata applies to postconviction relief proceedings:
 8. The Supreme Court of Ohio will apply the doctrine of res judicata in determining whether postconviction relief should be given * * *.
 9. Under the doctrine of res judicata, a final judgment of conviction bars a convicted defendant who was represented by counsel from raising and litigating in any proceeding except an appeal from that judgment, any defense or any claimed lack of due process that was raised or could have been raised by the defendant at the trial, which resulted in that judgment of conviction, or on an appeal from that judgment.
(Emphasis sic.) State v. Perry (1967), 10 Ohio St.2d 175, paragraphs eight and nine of the syllabus. It is equally well established that the bar of res judicata applies to constitutional issues:
 Constitutional issues cannot be considered in postconviction relief proceedings * * * where they have already been or could have been fully litigated by the prisoner while represented by counsel, either before his judgment of conviction or on direct appeal from that judgment * * *.
Id. at paragraph seven of the syllabus. In that regard, the Supreme Court of Ohio has noted that constitutional challenges to the death penalty are properly raised before a judgment of conviction:
 Generally, the law in Ohio is that the failure to raise the issue of a statute's constitutionality at the trial level constitutes a waiver of such issue. The acceptable procedure is to raise any constitutional challenges to the death penalty statute by way of specific motions, with the opportunity for the state to respond and the trial court to rule on said motions.
(Citation omitted.) State v. Zuern (1987), 32 Ohio St.3d 56, 63.
In the instant case, White raised these same constitutional arguments in a fifty-five page motion prior to trial. Because White actually raised his constitutional challenges to the death penalty prior to his judgment of conviction, he is barred by the doctrine of res judicata from raising these issues again in a petition for postconviction relief. Therefore, White's second and third assignments of error are not well taken.
V.
White's first assignment of error states:
 THE TRIAL COURT ERRED IN DISMISSING APPELLANT'S FIRST, SECOND, THIRD AND FOURTH GROUNDS FOR RELIEF REGARDING INEFFECTIVE ASSISTANCE OF COUNSEL WITHOUT FIRST GRANTING DISCOVERY AND AN EVIDENTIARY HEARING * * *.
As previously discussed, White was not entitled to any discovery in support of his petition. Benner, supra. Therefore, that portion of White's first assignment of error is not well taken.
In regard to the trial court's failure to hold an evidentiary hearing on these claims:
 Before a hearing is granted, the petitioner bears the initial burden in a post-conviction proceeding to submit evidentiary documents containing sufficient operative facts to demonstrate the lack of competent counsel and also that the defense was prejudiced by counsel's ineffectiveness.
(Emphasis sic.) Jackson, supra, at 111. When a defendant alleges that his counsel was ineffective, he must prove that counsel's performance was deficient and that the deficiency was prejudicial to the defense. Strickland v. Washington (1984), 466 U.S. 668,687, 80 L.Ed.2d 674, 693. "[T]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 688, 80 L.Ed.2d at 693. "[T]he performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." Id. at 688,80 L.Ed.2d at 694. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689, 80 L.Ed.2d at 694.
White's first ground for relief claimed that his trial counsel was ineffective for failing to present evidence of White's alleged brain damage and central nervous system dysfunction, for failing to challenge the allegedly faulty testing performed by the prosecution's expert, and for detrimentally relying on an unqualified defense expert. In support of this ground for relief, White submitted the affidavit of a psychologist named Haskins, copies of sixteen psychological journal articles, records from the Children Services Board concerning White's upbringing, records from the Lima State Hospital concerning White's father, an affidavit from White's mother, affidavits from three of White's siblings, and a copy of a law review article.
Initially, none of this evidence undermines the qualifications or conclusions of White's expert witness. At best, the affidavit of Haskins indicates some professional disagreement over the extent of White's mental problems. Nevertheless, we see nothing objectively unreasonable about an attorney's reliance on the conclusions of his own qualified expert witness. Moreover, "[a] postconviction petition does not show ineffective assistance merely because it presents a new expert opinion that is different from the theory used at trial." State v. Combs (1994), 100 Ohio App.3d 90,103. Therefore, the documentary evidence submitted with White's first ground for relief failed to contain sufficient operative facts to demonstrate the lack of competent counsel.
White's second ground for relief claimed that trial counsel was ineffective for failing to discover and present evidence of White's turbulent upbringing, including allegations of abuse and neglect. In support of this ground for relief, White submitted the Children Services Board records, a memorandum from the Child Welfare office concerning White's mother, the affidavits from White's family members, and two law review articles.
"It is quite clear * * * that the duty of defense counsel to investigate his client's background for mitigating factors is an indispensable component of the constitutional requirement that a criminal defendant and particularly one on trial for his life be afforded effective representation and assistance from his lawyer." State v. Johnson (1986), 24 Ohio St.3d 87, 90. As such, White's trial counsel had a duty to make a reasonable investigation. See id. at 89.
In the instant case, White's trial counsel went far beyond the "maladroit presentation" that was declared ineffective inJohnson. In Johnson, the Supreme Court vacated a death sentence based in part on the fact that "[n]o mitigating evidence of any kind was offered." Id. In the instant case, White's trial counsel performed extensive discovery and presented volumes of mitigating evidence. As such, trial counsel's actions were more than sufficient to discharge his duty to conduct a reasonable investigation. See State v. Bradley (1989), 42 Ohio St.3d 136,144 (distinguishing Johnson, supra, by finding that the duty to investigate was satisfied solely by trial counsel's use of expert reports and expert testimony regarding the defendant's mental state in mitigation).
The evidence that White now claims should have been discovered and presented by his trial counsel does not undermine our conclusion. The affidavits from White's family members do not provide any new or additional evidence. White's trial counsel obtained the testimony of White's mother, sister Erica, and cousin Valinda Hall concerning White's childhood. This testimony covered in detail all of the issues that are set forth in the affidavits attached to White's petition for postconviction relief. As such, trial counsel did present this evidence to the jury. Trial counsel's choice of witnesses with which to present this evidence is a trial tactic. See State v. Hunt (1984), 20 Ohio App.3d 310,312. The use of debatable trial tactics does not amount to ineffective assistance. State v. Clayton (1980), 62 Ohio St.2d 45,49.
Similarly, the welfare records concerning the conditions of the White household depicted the same abuse and neglect that was set forth at trial by the testimony of White's relatives and White's expert witness. Although the welfare records depict the abuse and neglect in greater detail than the trial testimony, trial counsel's failure to discover and utilize the actual welfare records to present this evidence did not render the investigation and presentation unreasonable. Therefore, the documentary evidence submitted in support of White's second ground for relief failed to contain sufficient operative facts to demonstrate the lack of competent counsel.
White's third ground for relief claimed that trial counsel was ineffective because co-counsel failed to participate in any meaningful way. This ground for relief is properly barred by resjudicata. White is represented by different counsel on direct appeal and co-counsel's alleged failure to participate should appear on the face of the record.
White's fourth ground for relief referred to the errors alleged in the previous three grounds for relief and claimed that their cumulative impact rendered counsel's assistance ineffective. Having addressed the previous three grounds for relief and found them wanting, we also find that the documentary evidence submitted with White's fourth ground for relief failed to contain sufficient operative facts to demonstrate the lack of competent counsel.
Because the documentary evidence submitted with White's first, second, and fourth grounds for relief all failed to contain sufficient operative facts to demonstrate the lack of competent counsel, and because White's third ground for relief was barred byres judicata, White was not entitled to a hearing on any of his first four grounds for relief. As such, White's first assignment of error is not well taken.
Judgment affirmed.
 KK The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed to appellant.
Exceptions.
 ___________________________ MARY CACIOPPO
FOR THE COURT
SLABY, P. J.
MAHONEY, J.
CONCUR
(Cacioppo, J., retired Judge of the Ninth District Court of Appeals, sitting by assignment pursuant to Section 6(C), Article IV, Constitution.)
(Mahoney, J., retired Judge of the Ninth District Court of Appeals, sitting by assignment pursuant to Section 6(C), Article IV, Constitution.)