RICH, Appellee and Cross–Appellant,

v.

McDONALD'S CORPORATION et al., Appellants and Cross–Appellees.

[Cite as *Rich v. McDonald's Corp.*, 155 Ohio App.3d 1, 2003-Ohio-5373.]

Court of Appeals of Ohio,
Eighth District, Cuyahoga County.

Nos. 80992 and 81111.

Decided Oct. 9, 2003.

Paige A. Martin Co., L.P.A., and Paige A. Martin, for appellee and cross-appellant.

Jones, Day, Reavis & Pogue, Johanna Fabrizio, Steven T. Catlett and Nikki J. Palmer, pro hac vice; Duvin, Cahn & Hutton and Michael T. Pearson; Brett Rawitz, for McDonald's Corporation.

Gittes & Schulte and Frederick M. Gittes; Louis A. Jacobs; Law Offices of John S. Marshall and Joshua J. Morrow, for amici curiae.

ANNE L. KILBANE, Judge.

{¶ 1} This is an appeal by McDonald's Corporation ("McDonald's") from a jury verdict awarding Russell Rich $5,000,000 in compensatory damages on his claim of employment discrimination following trial before Visiting Judge John J. Angelotta. McDonald's claims that Rich presented insufficient proof that AIDS was a disability within the meaning of discrimination statutes; that the judge erred in not submitting its proposed jury instructions or interrogatories to the jury, and erred in incompletely answering a jury question; and the award of damages was without reasonable basis. Rich, in a cross-appeal, contends that Judge Ronald Suster erred in granting summary judgment to McDonald's on his claim for negligent misrepresentation; Judge Angelotta wrongly refused to instruct the jury on the possibility of a punitive-damages award; and Judge Suster improperly denied him post-trial discovery and an award of prejudgment interest. We reverse and remand for a new trial.

{¶ 2} Russell Rich, 37 years of age at the time this case came to trial in October 2001, had been employed by various McDonald's restaurants, or "stores," as they are called, since the age of 13, until he resigned in October 1997. McDonald's conducts its food-service operations in one of two ways: it sells franchises to individual owner-operators who conduct the fast-food business independently, but under McDonald's imposed standards, or it retains ownership and management of stores under a corporate subsidiary known as McDonald's Operating Company, or "McOpCo." McDonald's of Hudson, owned by Sal Baglieri, is an owner-operated franchise.

{¶ 3} From the record we glean the following: Rich had been a manager at Baglieri's Hudson store since 1989 and, during his tenure there, he had done an impressive job. In 1997, concerned that he had advanced as far as he could as an employee of an owner-operated store, Rich decided to seek employment with McOpCo as a manager, where opportunities for advancement beyond one store existed. He interviewed with McOpCo Human Resources Supervisor Odell Jones in May 1997, and Jones extended a job offer for a manager's position at one of its stores. Rich accepted the offer and was assigned to run a recently acquired Minerva, Ohio location. His direct superior was the General Manager, Linda Vance, and her superior, with whom he would regularly interact, was Patricia Hammons. He began employment with McOpCo in this capacity on July 1, 1997.

{¶ 4} The Minerva store, acquired from an owner-operator, had been evaluated as an "F'" grade, or poor location and it needed to be turned into a profitable enterprise. Vance was told by Hammons that Rich was going to be the manager of the Minerva store, although his role would be limited to addressing store quality, service, and cleanliness ("QSC") issues, and that she retained responsibility for scheduling staff while an assistant manager was to continue to order supplies.

{¶ 5} Rich was hospitalized on July 10, 1997, with an AIDS-related illness, which included suspicions of a bacterial meningitis infection. It appears that he could have returned to work without a note from his physician but, when Vance told Jones that she had been unable to visit Rich in the hospital because of some type of "quarantine" sign on his door, Jones became concerned about Rich's carrying a contagious infection. Rich signed a release permitting McDonald's to contact his physician, who confirmed that he was not at risk for spreading a disease to customers, and Rich returned to work.

{¶ 6} Very early in his employment, Rich began to be dissatisfied with his limited responsibilities and having to work unacceptably long hours and, by late August 1997, he claimed that he contacted Hammons and complained that the combination of what he viewed as restricted responsibility and oppressively long

hours was presenting him with a hostile work environment, and affecting his immune system.

{¶ 7} Rich requested some unpaid leave during early September 1997, and took a trip to Florida. There he underwent emergency gall bladder surgery. Rich returned to Cleveland, and he and Jones agreed, pursuant to medical advice, that he would return to work on October 16. In the meantime, however, Hammons decided to transfer him to a McOpCo store in Lodi, Ohio. When Jones told Rich that he was to co-manage the store with Stuart Gerry, who had successfully made the transition from managing an owner-operated store to running a McOpCo store, Rich claimed that he responded that this change was being made to strip him of further managerial responsibility and to discriminate against him because he had AIDS and was the victim of a hostile work environment. A few days later, Rich called Jones to inform him that he was not going to accept reassignment and resigned. McDonald's of Hudson declined to re-employ him.

{¶ 8} In October 1998, Rich sued McDonald's and McDonald's of Hudson, alleging, among other claims, constructive discharge and discrimination. A removal to the federal district court resulted in a remand, and both defendants moved for summary judgment. Judge Suster granted the motion of McDonald's of Hudson, ruling that "ASSUMING PLTF [sic] CAN PROVE HIS PRIMA FACIE CASE, PLTF [sic] WAS UNABLE TO ESTABLISH THAT A GENUINE ISSUE OF MATERIAL FACT EXISTS AS TO PRETEXT."[1] On September 22, 2000, the judge granted McDonald's motion in part, ruling without elaboration that summary judgment was appropriate as to "Count 1," or the medical benefit misrepresentation count, but inappropriate as to "Count 2," or the employment discrimination claim, noting that there were "genuine issues of material fact." The case proceeded to a jury trial before the visiting Judge.

{¶ 9} During trial, the parties presented much conflicting testimony. Rich claims that he was told that McDonald's health benefits covered pre-existing medical conditions, but McDonald's benefits policies at the time clearly denied such coverage until the insured was employed for one year. Rich claims that management of McDonald's was aware of his condition, having first informed Jones when he was required to sign a medical release form after returning from his July 1997 illness, and having informed both Hammons and a Regional Human Resources Supervisor personally in late August 1997. He stated that Vance made inappropriate remarks about him being gay in front of coemployees. He testified that he complained to Jones at the Lodi store that the transfer was being made to strip him of managerial responsibility and to discriminate against

---

1. Vol. 2479, Pg. 0087. Rich's claims against McDonald's of Hudson were settled while this appeal was pending, and McDonald's of Hudson is no longer a party.

him because he had AIDS and was told that he was going to be allowed to do nothing other than to sell food at the store counter for the rest of his life. He explained that he was forced to resign because of the hostile environment created by McOpCo personnel who discriminated against him because of his HIV/AIDS medical condition.

{¶ 10} McDonald's witnesses denied that Rich ever told them that he had an HIV infection or AIDS, although Jones admitted that he suspected that that was the situation when he reviewed a list of Rich's medications in September 1997. Hammons, Vance, and Jones claimed that Rich's transfer to the Lodi store was because of his incompatibility with Vance and his inability to catch onto the McOpCo way of managing. There was various testimony to the effect that Rich complained about his limited responsibilities and work hours and that his transfer to the Lodi store was "not fair," but McDonald's witnesses generally denied that he ever complained about a hostile work environment or discrimination because he had AIDS.

{¶ 11} The judge granted McDonald's a directed verdict on Rich's claim for punitive damages. The jury returned a verdict of $5,000,000 in compensatory damages for Rich, and McDonald's moved for a new trial or, alternatively, JNOV, which were denied. Judge Suster then denied Rich's post-trial motions in which he sought discovery relating to any "claims file" McDonald's possessed and its claim-evaluation procedure, and for prejudgment interest.

{¶ 12} McDonald's now appeals in six assignments of error, and Rich cross-appeals in three assignments of error, reproduced at Appendix A.

{¶ 13} We find McDonald's second assignment of error dispositive. It contends that the judge arbitrarily refused its requests for interrogatories. We agree. Civ.R. 49(B) provides:

"The court shall submit written interrogatories to the jury * * .* upon request of any party prior to the commencement of argument. * * * The court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the interrogatories shall be submitted to the jury in the form that the court approves."

{¶ 14} The interrogatories may be directed to one or more determinative issues, whether issues of fact or mixed issues of fact and law. A judge does not have a mandatory duty to submit all written interrogatories to the jury[2]; rather, he retains the discretion to reject proposed interrogatories that are ambiguous, redundant, or legally objectionable.[3] "The essential purpose to be

2. *Ziegler v. Wendel Poultry Serv., Inc.* (1993), 67 Ohio St.3d 10, 14–15, 615 N.E.2d 1022.

3. *UZ Engineered Prods. Co. v. Midwest Motor Supply Co., Inc.* (2001), 147 Ohio App.3d 382, 399, 770 N.E.2d 1068, citing *Ziegler, supra,* 67 Ohio St.3d at 15, 615 N.E.2d 1022.

served by interrogatories is to test the correctness of a general verdict by eliciting from the jury its assessment of the determinative issues presented by a given controversy in the context of evidence presented at trial."[4] Determinative issues are "ultimate issues" that when decided will settle the controversy between the parties.[5]

{¶ 15} In *Cincinnati Riverfront Coliseum, Inc. v. McNulty,* supra, the trial judge flatly refused to submit a large number of interrogatories to the jury due to time considerations, and the Supreme Court held:

"This court respects the time restraints under which trial courts must work; however, we can not approve the ignoring of the Civil Rules. We therefore agree with the decision of the court of appeals, and hold that the trial court erred when it failed to follow the mandate of Civ.R. 49(B)."

{¶ 16} Here, the judge failed even to examine McDonald's instructions and interrogatories, stating that its proposed instructions were too long and that he did not favor using interrogatories in "a case like this." However, jury interrogatories are a useful way to ensure that juries correctly determine the issues presented to them and provide insight into their deliberative process, and shall be used if legally and factually appropriate.

{¶ 17} Additionally, we must point out that one jury instruction given was simply incorrect and may have led the jury to an erroneous verdict. In delineating the elements of an employment-discrimination claim, the judge instructed the jury that "[t]he defendant claims that it acted for non-discriminatory reasons. In deciding whether an employer has acted for non-discriminatory reasons you should not substitute your judgment for that of the employer even if you would have made a different business decision." This instruction is incomplete and does not accurately state the law. The proper inquiry is whether the employer had a nondiscriminatory reason for taking the action it did and whether any discriminatory reason that may have been proven was more likely the motivator for the decision. This instruction did not give the jury the opportunity to weigh the parties' asserted reasons for Rich's transfer or any other employment decision McOpCo personnel made toward him. As such, it was facially deficient and an incorrect statement of the law. In spite of that fact, we would

---

4. *Cincinnati Riverfront Coliseum, Inc. v. McNulty Co.* (1986), 28 Ohio St.3d 333, 336–337, 28 OBR 400, 504 N.E.2d 415. See, also, *Ziegler,* 67 Ohio St.3d 10, 615 N.E.2d 1022; and *Joseph v. Ohio Power Co.* (1988), 46 Ohio App.3d 170, 173, 546 N.E.2d 970 (concluding that "only interrogatories * * * dispositive of determinative or ultimate issues must be submitted by the trial court").

5. *Ziegler,* 67 Ohio St.3d at 15, 615 N.E.2d 1022; *Miller v. McAllister* (1959), 169 Ohio St. 487, 494, 8 O.O.2d 485, 160 N.E.2d 231.

have had insight into the jury's analysis of the issues before it if proper interrogatories would have been submitted to it.

{¶ 18} Applying the test for rejection of jury interrogatories outlined in *Ziegler*, supra, that jury interrogatories may be rejected if they are ambiguous, redundant, or legally objectionable, a cursory review of McDonald's interrogatories indicate that they were appropriate.

{¶ 19} "The established rule in Ohio is that interrogatories, to be proper, must call for special findings on *particular questions of fact* of an ultimate and determinative nature—findings of such a character as will test the correctness of the general verdict returned and enable the court to determine as a matter of law whether such verdict shall stand." [6]

{¶ 20} Rich contends that his HIV/AIDS status qualified him as "disabled" as defined by the federal Americans with Disabilities Act [7] ("ADA") and Ohio law.[8] The ADA defines "disability" as "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of having such impairment; or (C) being regarded as having such an impairment." [9]

{¶ 21} Interrogatories 1(a), 1(b), 6(d), 7(d), 8(c), 9(c), and 12(d) inquire whether McOpCo had knowledge of Rich's disability, of his HIV status, and of the work environment.

{¶ 22} Jury interrogatories 2(a) through (c) center on the definition of "disability." For example, interrogatory 2(a) asks:

"Do you find from the evidence, and by a preponderance thereof, that plaintiff's HIV-positive status substantially limited one or more of his major life activities during the period of his employment with McDonald's?"

{¶ 23} Similarly, jury interrogatories 3(a), 3(b), and 4 address the concepts of "impairment," "substantially limit," "record of having such impairment," and "regarded," which are all vital to the ultimate determination of "disability."

{¶ 24} Upon examination of the 14 main interrogatories and the 43 total interrogatories (sub-parts included), each interrogatory and its corresponding

---

6. *Schweinfurth v. C.,C., C. & St. L. Ry. Co.* (1899), 60 Ohio St. 215, 232, 54 N.E. 89; *Cleveland & Elyria Elec. RR. Co. v. Hawkins* (1901), 64 Ohio St. 391, 397, 60 N.E. 558, as cited in *Ragone v. Vitali & Beltrami, Jr., Inc.* (1975), 42 Ohio St.2d 161, 71 O.O.2d 164, 327 N.E.2d 645.

7. Section 12112(a), Title 42, U.S.Code.

8. R.C. 4112.02.

9. Section 12102(2), Title 42, U.S.Code.

sub-part(s) appear to address essential elements of the case, beginning with the definition of "disability" and ending with the calculation of damages. Unquestionably, this is a complex case. The jury, submitting its own question to the judge: "Need clarification on the definition of what is a disability with regards to HIV (ADA)," reveals how it struggled with these questions as well. These interrogatories were drafted to provide insight into the jury's analysis of the issues before it, and the judge's refusal even to look at them resulted in reversible error.[10] Assignment of Error No. II has merit.

{¶ 25} McDonald's five remaining assignments of error and Rich's three cross-assignments of error, in light of our determination on Assignment of Error No. II, are rendered moot.[11]

{¶ 26} Judgment reversed, the verdict is vacated, and a new trial is ordered.

Judgment reversed<br>and cause remanded.

MICHAEL J. CORRIGAN, P.J., and PATRICIA A. BLACKMON, J., concur.

## APPENDIX A

Assignments of Error and Cross–Assignments of Error as written in the parties' merit briefs to this court.

{¶ 27} McDonald's Corp.'s assignments of error:

{¶ 28} "I. RICH FAILED TO PROVE THAT HE HAD A 'DISABILITY' WITHIN THE MEANING OF OHIO AND FEDERAL LAW:

"A. RICH DID NOT PROVE THAT HIS HIV/AIDS CONDITION SUBSTANTIALLY LIMITED ANY MAJOR LIFE ACTIVITY.

"B. RICH PRODUCED NO EVIDENCE THAT McDONALD'S RELIED ON A RECORD OF HIS HAVING A SUBSTANTIALLY–LIMITING IMPAIRMENT.

"C. RICH PRODUCED NO EVIDENCE THAT McDONALD'S REGARDED HIM AS HAVING A SUBSTANTIALLY–LIMITING IMPAIRMENT.

{¶ 29} "II. THE TRIAL COURT IMPROPERLY REFUSED TO SUBMIT ANY INTERROGATORIES TO THE JURY.

{¶ 30} "III. THE TRIAL COURT ERRED BY BLINDLY SUBMITTING RICH'S PROPOSED INSTRUCTIONS TO THE JURY:

---

10. *Cincinnati Riverfront Coliseum, Inc. v. McNulty,* supra; *West v. Vajdi* (1987), 39 Ohio App.3d 60, 528 N.E.2d 1289.

11. App.R. 12(A)(1)(c).

"A. BY IGNORING McDONALD'S PROFFERED INSTRUCTIONS, THE TRIAL COURT FAILED TO INSTRUCT THE JURY ON TWO CRITICAL POINTS.

"B. THE INSTRUCTIONS GIVEN BY THE TRIAL COURT WERE LE-GALLY FLAWED IN TWO CRITICAL RESPECTS.

{¶ 31} "IV. THE TRIAL COURT FAILED TO FULLY AND COMPLETE-LY ANSWER A JURY QUESTION REGARDING THE CRITICAL ISSUE OF DEFINING 'DISABILITY.'

{¶ 32} "V. THE JURY'S DAMAGE AWARD HAS NO SUPPORT IN THE RECORD EVIDENCE:

"A. THE TRIAL COURT ERRED IN ADMITTING THE TESTIMONY OF RICH'S DAMAGES EXPERT.

"B. IN ALL EVENTS, THE TESTIMONY OF RICH'S DAMAGES EX-PERT CANNOT SUSTAIN A $5 MILLION DAMAGES AWARD.

"C. THE TESTIMONY OF RICH'S TREATING PHYSICIAN DOES NOT SUPPORT THE DAMAGES AWARD.

"D. RICH'S OWN TESTIMONY CANNOT SUSTAIN A $5 MILLION DAMAGES AWARD.

"E. THE DAMAGES AWARD WAS THE PRODUCT OF PASSION AND PREJUDICE AND WAS ENTERED AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶ 33} "VI. THE MULTIPLE ERRORS BELOW WARRANT THIS COURT'S INTERVENTION THROUGH EITHER ENTRY OF JUDGMENT FOR McDONALD'S, A NEW TRIAL, OR AT A MINIMUM, REMITTITUR."

{¶ 34} Rich's cross–assignments of error:

{¶ 35} "I. THE TRIAL COURT ERRED IN DIRECTING A VERDICT AGAINST APPELLEE ON THE ISSUE OF PUNITIVE DAMAGES SINCE THE EVIDENCE DEMONSTRATES A PATTERN OF CONDUCT THAT MEETS THE LEGAL STANDARD OF MALICE.

{¶ 36} "II. THE TRIAL COURT ERRED IN DENYING CROSS–APPEL-LANT'S MOTION TO STAY PREJUDGMENT PROCEEDINGS IN ORDER TO OBTAIN DISCOVERY OF McOpCo'S RISK ANALYSIS AND IN DENY-ING PRE–JUDGMENT INTEREST:

"A. CROSS–APPELLEE FAILED TO COOPERATE IN DISCOVERY.

"B. DEFENDANT'S OFFER OF $80,000 BEFORE TRIAL FAILED TO COMPENSATE PLAINTIFF FOR HIS DOCUMENTED ECONOMIC LOSS AND INAPPROPRIATELY DISCOUNTED ITS RISK OF LIABILI-TY.

"C.  THE TRIAL COURT ERRED IN REFUSING TO PERMIT APPEL-
LEE TO CONDUCT DISCOVERY DEPOSITIONS PRIOR TO ISSUING A
RULING ON [RICH'S] PREJUDGMENT INTEREST MOTION.

{¶ 37} "III. RUSSELL RICH HAS A VALID CAUSE OF ACTION FOR
MISREPRESENTATION WHICH SHOULD BE HEARD BY A JURY:

"A.  ERISA DOES NOT PREEMPT MR. RICH'S FRAUDULENT MIS-
REPRESENTATION CLAIM SINCE THE COVERAGE UNDER THE
INSURANCE PLAN WAS NOT AT ISSUE."