OPINION *Page 2 
{¶ 1} Defendant-Appellant Massachusetts Casualty Insurance Company ("MCIC") appeals the judgments of the Stark County Court of Common Pleas, entered in favor of the Plaintiff-Appellee David E. Jay ("Jay"). In the first phase of the trial based upon breach of contract, the trial court entered judgment on a jury verdict in favor of Jay. The trial proceeded to the second phase on Jay's bad faith claim and the trial court entered judgment on a jury verdict in favor of Jay. The trial court then overruled MCIC's motions for directed verdict, new trial, judgment notwithstanding the verdict, and remittitur. The trial court also granted declaratory judgment in favor of Jay.
 STATEMENT OF THE CASE AND THE FACTS {¶ 2} Since the 1980's, Jay was a successful attorney in Canton, Ohio. He owned his own practice and worked as a litigator as well as maintained business clientele. Because he was a sole practitioner, his insurance agent recommended that Jay purchase disability insurance in order to protect his business and himself in the event Jay would no longer be able to practice as an attorney. Beginning in 1980, Jay purchased five individual disability income policies and one professional overhead expense policy from MCIC. The policies are labeled as "own occupation" policies in which "total disability" is defined as "your substantial inability to perform the material duties of your work due to Injury or Sickness. Work means: (1) your regular occupation, trade or profession; and (2) such exist at the start of any period of disability for which a claim for benefits is made under this Policy. * * *" Jay's disability policies also contain a "Residual Disability" rider which covers the insured in the event that he maintains an *Page 3 
ability to perform some but not all the important duties of his work due to injury or sickness.
 {¶ 3} In 1994, Jay was diagnosed with Type 2 diabetes. He continued his practice and managed his diabetes with medication until the diabetes became uncontrolled in 1998. He began treating with Dr. Smith, who recommended that Jay take some time off work to gain control over his blood sugar levels. Dr. Smith observed that while Jay was working, Jay could not effectively manage his diabetes. He also observed Jay was under stress and recommended that Jay contact Dr. Sadeghian, a psychologist, for stress management. Jay started treating with Dr. Sadeghian in May 1998.
 {¶ 4} At that time, Jay realized that he could not maintain his practice. He merged his practice with another law firm where Jay would serve "of counsel," but effectively Jay no longer actively practiced as an attorney.
 {¶ 5} On May 29, 1998, Jay contacted MCIC to file a claim under his disability policies. MCIC sent Jay forms to complete in order to process his claim. From May to December 1998, Jay and his treating physicians provided information to MCIC regarding his disability claim. In December 1998, Jay began treating with Dr. Nadas, a psychiatrist.
 {¶ 6} Based upon its investigation, MCIC found that Jay suffered from a manageable diabetic condition and it also found Jay did not suffer from any psychiatric disorder that would render him totally disabled. On December 10, 1998, MCIC denied Jay's claim for total disability under his policies. MCIC did provide Jay total disability benefits from May 29, 1998 to October 28, 1998 in the interests of resolving the matter. *Page 4 
 {¶ 7} In January 1999, Jay contacted Art Fries, a disability claims consultant. Jay paid Fries a retainer to investigate his disability claim with MCIC. Jay subsequently underwent heart bypass surgery and did not follow up with Fries until November 2000. Fries subsequently submitted a letter to MCIC regarding Jay's disability claim.
 {¶ 8} In January 2001, MCIC reopened Jay's disability claim based upon Fries' letter. Jay had since then retained legal counsel to assist with the processing of his disability claim. Jay's counsel and MCIC repeatedly corresponded regarding information MCIC required in order to investigate Jay's claim.
 {¶ 9} Because of a three-year limitations period set out in his disability policies, Jay filed a lawsuit against MCIC in April 2001 claiming breach of contract, bad faith, and conspiracy to defraud (Case No. 2001CV01080). Jay also requested declaratory judgment and punitive damages. The case was assigned to Judge Lioi and set for trial on March 24, 2003.
 {¶ 10} During the pendency of the lawsuit, MCIC continued to process Jay's claim. Discovery obtained for the lawsuit was also used to investigate the claim. MCIC denied Jay's disability claim again on December 18, 2002.
 {¶ 11} Jay voluntarily dismissed his lawsuit against MCIC and refiled the suit on March 5, 2004 (Case No. 2004CV00843). The matter was originally assigned to Judge Lioi, but the matter was transferred to a visiting judge. The trial was set for November 7, 2005. Because of the overwhelming nature of the case, the visiting judge was unable to proceed with the case. The lawsuit was assigned to a second visiting judge. The matter proceeded to jury trial on November 7, 2005 but ended in a mistrial on November *Page 5 
17, 2005. The case was then assigned to a third visiting judge and went to trial on January 30, 2006.
 {¶ 12} The trial proceeded in two phases, breach of contract and bad faith. On February 14, 2006, the jury found in favor of Jay on his claim of breach of contract and awarded Jay $429,400 in damages. After the second phase of the trial, the jury found in favor of Jay on his claim of bad faith and awarded Jay $1,130,000 in damages. The jury went on to award Jay $3,000,000 in punitive damages. On March 20, 2006, the trial court entered judgment upon the verdict in the amount of $4,559,400 and granted declaratory judgment in favor of Jay. On July 5, 2006, the trial court granted Jay's motion for prejudgment interest and attorney fees.[4] The trial court also overruled MCIC's motions for directed verdict, new trial, judgment notwithstanding the verdict, and remittitur.
 {¶ 13} It is from these decisions MCIC now appeals. MCIC raises ten Assignments of Error:
 {¶ 14} "I. THE TRIAL COURT ERRED IN THE JURY CHARGE BY: (A) REFUSING TO IDENTIFY JAY'S OBLIGATIONS UNDER THE CONTRACT; (B) INSTRUCTING THAT MCIC BORE THE BURDEN OF PROVING JAY'S FAILURE TO PERFORM; (C) INSTRUCTING THAT MCIC BORE THE BURDEN OF ESTABLISHING PREJUDICE AS A RESULT OF JAY'S FAILURE TO PERFORM; AND (D) INCLUDING A ONE-SIDED INSTRUCTION THAT MCIC'S BREACH EXCUSED JAY'S PERFORMANCE BUT NOT CLARIFYING THAT THE CONVERSE WAS ALSO TRUE. *Page 6 
 {¶ 15} "II. THE TRIAL COURT ERRED BY SUBMITTING TO THE JURY A MISLEADING INTERROGATORY SUGGESTING THAT A `CONCURRENT DISABILITY' WAS AN INDEPENDENT CONTRACTUAL BASIS FOR RECOVERING BENEFITS.
 {¶ 16} "III. THE TRIAL COURT ERRED IN PERMITTING JAY TO TESTIFY ABOUT DISCOVERY REQUESTS MCIC SERVED ON HIM IN THE LITIGATION.
 {¶ 17} "IV. THE TRIAL COURT ERRED IN DENYING MCIC'S MOTIONS FOR DIRECTED VERDICT AND FOR JUDGMENT NOTWITHSTANDING THE VERDICT ON THE CLAIM OF BAD FAITH AND FOR PUNITIVE DAMAGES.
 {¶ 18} "V. THE TRIAL COURT ERRED IN PERMITTING JAY TO PRESENT MISLEADING EXPERT TESTIMONY FROM MARY FULLER, ESPECIALLY AFTER JAY HAD FALSELY REPRESENTED IN SUMMARY JUDGMENT BRIEFING THAT FULLER WAS `FINALIZING' HER OPINIONS WHEN SHE HAD NEVER EVEN BEEN RETAINED.
 {¶ 19} "VI. THE TRIAL COURT ERRED IN FAILING TO INTERVENE DURING JAY'S IMPROPER CLOSING ARGUMENT.
 {¶ 20} "VII. THE TRIAL COURT ERRED IN PERMITTING EXPERT TESTIMONY FROM ARTHUR FRIES THAT LACKED PROPER FOUNDATION.
 {¶ 21} "VIII. THE TRIAL COURT ERRED IN PERMITTING JAY TO PRESENT EVIDENCE OF A CARDIAC AILMENT THAT WAS NO LONGER AN ISSUE IN THE CASE. *Page 7 
 {¶ 22} "IX. THE TRIAL COURT ERRED IN PERMITTING JAY TO PRESENT EVIDENCE OF COMPENSATORY DAMAGES THAT HAD NOT BEEN PROVIDED IN DISCOVERY.
 {¶ 23} "X. THE TRIAL COURT ERRED AWARDED (SIC) PREJUDGMENT INTEREST AT THE WRONG STATUTORY RATES."
 {¶ 24} MCIC's Assignments of Error I through IX challenge the trial court's rulings on the motions for directed verdict, judgment notwithstanding the verdict and new trial. For purposes of simplicity, we will discuss the law regarding these motions in general before addressing the specific Assignments of Error.
DIRECTED VERDICT AND JUDGMENT NOTWITHSTANDING THE VERDICT
 {¶ 25} Civ. R. 50(A) states in pertinent part:
 {¶ 26} "When a motion for directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come but to one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
 {¶ 27} Civ. R. 50(B) governs motions for judgment notwithstanding the verdict. It provides:
 {¶ 28} "Whether or not a motion to direct a verdict has been made or overruled and not later than fourteen days after entry of judgment, a party may move to have the verdict and any judgment entered thereon set aside and to have judgment entered in accordance with his motion; or if a verdict was not returned such party, within fourteen *Page 8 
days after the jury has been discharged, may move for judgment in accordance with his motion. A motion for a new trial may be joined with this motion, or a new trial may be prayed for in the alternative. If a verdict was returned, the court may allow the judgment to stand or may reopen the judgment. If the judgment is reopened, the court shall either order a new trial or direct the entry of judgment, but no judgment shall be rendered by the court on the ground that the verdict is against the weight of the evidence. If no verdict was returned the court may direct the entry of judgment or may order a new trial."
 {¶ 29} When ruling on a motion for judgment notwithstanding the verdict, a trial court applies the same test as in reviewing a motion for a directed verdict. Ronske v. Heil Co., Stark App. No. 2006-CA-00168, See also, Pariseau v. Wedge Products, Inc. (1988),36 Ohio St. 3d 124, 127, 522 N.E.2d 511. "A motion for judgment notwithstanding the verdict is used to determine only one issue i.e., whether the evidence is totally insufficient to support the verdict."Krauss v. Streamo, Stark App. No. 2001CA00341, 2002-Ohio-4715, paragraph 14; see also, McLeod v. Mt. Sinai Medical Center (2006),166 Ohio App. 3d 647, 853 N.E.2d 1235, reversed on other grounds, 116 Ohio St.3d 139,876 N.E.2d 1201. Neither the weight of the evidence nor the credibility of the witnesses is a proper consideration for the court. Posin v. A.B.C. Motor Court Hotel, Inc. (1976), 45 Ohio St.2d 271, 275,344 N.E.2d 334. See, also, Civ.R. 50(B); and Osler v. Lorain (1986),28 Ohio St.3d 345, 347, 504 N.E.2d 19. In other words, if there is evidence to support the nonmoving party's side so that reasonable minds could reach different conclusions, the court may not usurp the jury's function and the motion must be denied. Osler, supra. *Page 9 
 {¶ 30} Appellate review of a ruling on a motion for judgment notwithstanding the verdict is de novo, Midwest Energy Consultants,L.L.C. v. Utility Pipeline, Ltd., Stark App. No. 2006CA00048,2006-Ohio-6232; Ronske v. Heil, supra.
 NEW TRIAL {¶ 31} Civ. R. 59 governs motions for new trial. It states in pertinent part:
 {¶ 32} "A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:
 {¶ 33} "Irregularity in the proceedings of the court, jury, magistrate, or prevailing party, or any order of the court or magistrate, or abuse of discretion, by which an aggrieved party was prevented from having a fair trial;
 {¶ 34} "Misconduct of the jury or prevailing party;
 {¶ 35} "Accident or surprise which ordinary prudence could not have guarded against;
 {¶ 36} "Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice;
 {¶ 37} "Error in the amount of recovery, whether too large or too small, when the action is upon a contract or for the injury or detention of property;
 {¶ 38} "The judgment is not sustained by the weight of the evidence; however, only one new trial may be granted on the weight of the evidence in the same case;
 {¶ 39} "The judgment is contrary to law;
 {¶ 40} "Newly discovered evidence, material for the party applying, which with reasonable diligence he could not have discovered and produced at trial; *Page 10 
 {¶ 41} "Error of law occurring at the trial and brought to the attention of the trial court by the party making the application;
 {¶ 42} "In addition to the above grounds, a new trial may also be granted in the sound discretion of the court for good cause shown. * * *"
 {¶ 43} In the recent case of Helfrich v. Mellon, Licking App. No. 06CA69, 2007-Ohio-3358, this court found when a party files a motion for a new trial because the judgment is not sustained by the sufficiency of the evidence, the trial court must review the evidence presented at trial and weigh the sufficiency of the evidence and the credibility of the witnesses. Helfrich at paragraph 86, citing Rohde v. Farmer (1970),23 Ohio St. 2d 82. In reviewing a trial court's decision regarding a motion for new trial, we use the abuse of discretion standard, Sharp v.Norfolk Western Railway Company, 72 Ohio St. 3d 307, 1995-Ohio-224,649 N.E. 2d 1219. This court may not disturb a trial court's decision unless we find the decision was unreasonable, unconscionable, or arbitrary, Id., citing Blakemore v. Blakemore (1983), 5 Ohio St. 3d 217.
 I. {¶ 44} In the first Assignment of Error, MCIC contends it is entitled to a new trial because the trial court erred in charging the jury during the breach of contract phase.
 {¶ 45} A trial court is required to charge the jury with instructions that are an accurate and complete statement of the applicable law.Marshall v. Gibson (1985), 19 Ohio St.3d 10, 12, 482 N.E.2d 583. However, a trial court is not bound to provide jury instructions in the language proposed by the parties even where those instructions espouse the correct legal principles at issue in the case. Henderson v. SpringRun Allotment (1994), 99 Ohio App.3d 633. Instead, the trial court possesses the discretion *Page 11 
to use its own language to communicate the same principles in language it deems proper. Id.
 {¶ 46} When we review a trial court's jury instructions, we must consider the jury instructions as a whole, rather than viewing an instruction in isolation, and then determine whether the jury charge probably misled the jury in a matter materially affecting the complaining party's substantial rights. Becker v. Lake Cty. Mem. Hosp.West (1990), 53 Ohio St.3d 202, 208; Williams v. Oeder (1995),103 Ohio App.3d 333, 342, Snyder v. Stanford (1968), 15 Ohio St.2d 31, 44 ("Where the trial court misstates the law or creates an ambiguity in a portion of its jury instructions, it is not reversible error where the court's instructions, considered as a whole, are not prejudicial to the objecting party.").
 {¶ 47} Absent an abuse of discretion, this court must affirm the trial court's jury instructions where the law is accurately stated.Schuller v. U.S. Steel Corp., 11th Dist. No. 2002-T-0087,2003-Ohio-5230, at ¶ 21. However, while a trial court has discretion in the actual wording of an instruction, the issue of whether an instruction is required presents a question of law for de novo review.State v. Howard, 4th Dist. No. 07CA2948, 2007-Ohio-6331, at ¶ 27
 {¶ 48} Appellant first contends that the trial court "refused to instruct the jury with respect to Jay's obligation, under Parts XV and XV-7 of his policies, to submit adequate and timely proof of loss to MCIC."
 {¶ 49} The entire MCIC disability insurance policy at issue was admitted as evidence at trial and provided to the jury during their deliberations. (Exhibit 1). Part XV pertained, in relevant part, to the policyholder's obligation to provide written notice of the *Page 12 
claim within 20 days of injury or sickness and the MCIC's obligation to furnish claims forms to the insured. (Parts XV-5 and 6). Specifically, Part XV-7 stated, "Written proof of loss must be furnished to us at our Home office. Such must be furnished within 90 days after the end of the benefit period for which we are liable in the case of claim for continuing loss. In a case of claim for other losses such must be furnished within 90 days after the date of such loss."
 {¶ 50} In proposed jury instructions, MCIC requested that the jury be instructed that a policyholder "has an obligation under the terms of the policy to complete the claims forms sent to him, to return the claims forms to MCIC within the time period established in the policy and to provided MCIC with the information it needs to determine if a benefit is payable and how much the benefit should be." (Defendant's Second Amended Jury Instruction No. 9, filed February 10, 2006).
 {¶ 51} MCIC's counsel requested that the trial court "include all of our jury instructions that we have tendered to the Court." (2-10-06 T.16). The trial court responded that:" * * * [t]he substance of the appropriate requests by the defendant are either included or summarized in the jury's charge and adequately presented to the jury". Id. at 17. The trial court further elaborated it was giving the jury a very short statement about what the contract says; then letting the lawyers advocate their client's position and use the interrogatories submitted by both parties to adequately address the parties' specific claims. Id. at 233.
 {¶ 52} At the beginning of the jury instructions, the trial court succinctly summarized the case to the jury as follows: "Here — each party claims that the other violated the contract. Here the plaintiff claims that the defendant breached the contract *Page 13 
by failing to pay benefits to him. The defendant claims that the plaintiff does not meet the definition of total disability under the contract. In addition, the defendant claims the plaintiff failed to provide sufficient proof of the claim and failed to cooperate." (2-10-06 T. 153).
 {¶ 53} Further, the trial court instructed the jury: "[h]ere the plaintiff, David Jay, claims that the defendants and its agents breached a series of six contracts providing for disability coverage and payment upon conditions and circumstances encompassed in the insurance contracts. The person who has and claims that facts exist must prove them by a preponderance of the evidence. This duty is known as the burden of proof. The burden of proof is on the plaintiff to prove the facts necessary for his case by a preponderance of the evidence. The burden of proof is on the defendant to prove the facts necessary for its case by a preponderance of the evidence. The defendant claims that the plaintiff has violated the terms of the policy by its, his act or failure to act according to the terms of the obligations imposed by him by the insurance policy. This is an affirmative defense. The burden of proving an affirmative defense by a preponderance of the evidence is on the defendant." Id. at 156-157.
 {¶ 54} Later in the charge, the jury was instructed: "In this case each of the parties claims that the contract is plain and unambiguous and identifies the acts that each party must take in compliance with its terms, including the sequence within each, within which each party is to act in filing and processing of a claim or claims. Here the parties disagree as to the meaning of certain language in the insurance policy and you must decide, from all the facts and circumstances in evidence, what the parties intended the disputed language to mean. You must examine the insurance contracts as a whole *Page 14 
and presume that the intent of the parties is reflected in the language of the policies." Id. at 164.[5]
 {¶ 55} Based on the above instructions, we find the trial court gave a straightforward and complete charge to the jury. The positions of the parties were outlined to the jury; the jury was properly instructed that each party bore the burden of proof on their claims; and the entire contract provisions were provided to the jury for their examination as to the specific terms. MCIC does not cite case law requiring a court to instruct the jury as to a party's specific contract obligations. The instructions, as a whole, were stated in a simplified manner so as not to confuse the jury.
 {¶ 56} It also is important that the interrogatories submitted by both parties to the jury ultimately determined the specific issues contended by the parties.
 {¶ 57} "The underlying purpose of jury interrogatories is to `test the correctness of a general verdict by eliciting from the jury its assessment of the determinative issues presented by a given controversy in the context of evidence presented at trial." Lewis v. Nease, 4th Dist. No. 05CA3025, 2006-Ohio-4362. Proper jury interrogatories must address determinative issues and must be based upon the evidence presented. Ziegler v. Wendel Poultry Serv., Inc. (1993),67 Ohio St.3d 10, 15 (citations omitted).
 {¶ 58} According to MCIC, the determinative issue for the jury to decide was whether Jay was disabled and had supplied MCIC with enough information that proved his disability. The jury was instructed that "[t]he burden of proof is on the plaintiff to *Page 15 
prove the facts necessary for his case by a preponderance of the evidence." (2-10-06, T. 156) MCIC followed this instruction with two interrogatories covering the relevant time periods of coverage: (1) "Do you find by a preponderance of the evidence that Mr. Jay was substantially unable to perform the material duties of his occupation due to a sickness as set forth in the contracts * * *"; and (2) "Do you find by preponderance of the evidence that Mr. Jay provided sufficient proof to MCIC at the time his claim was made to support his claim that he was `totally disabled' * * *". The jury responded "yes" to both questions for all of the relevant time periods.
 {¶ 59} Accordingly, we reject MCIC's contention that the jury instructions, without the specific contract terms, probably misled the jury in any matter materially affecting their substantial rights. In so finding, we correspondingly reject Jay's contention that the trial court's issuance of the declaratory judgment renders moot MCIC's challenge to the jury instructions. Upon review, the trial court's declaratory judgment was made after the jury verdict, and did not address Jay's claim that MCIC waived any failure on the part of Jay in regards to proof of loss. Furthermore, Jay's contention that MCIC waived any failure on the part of Jay in regards to proof of loss was an issue to be decided at trial, by either the court or jury. This did not occur and therefore, we may not consider this issue on appeal.
 {¶ 60} MCIC further contends the trial court erred in instructing the jury that MCIC bore the burden of proving, as an affirmative defense, that Jay violated the terms of the policy by his acts or failure to act according to the terms of the obligations imposed on him. MCIC characterized this as a Jay's "duty to cooperate" with his claim by providing necessary information to MCIC. See, Defendant's Second Amended Jury Instructions, *Page 16 
No. 9. MCIC also asserts the trial court erred in instructing the jury that MCIC had the burden to establish material prejudice caused by Jay's failure to perform.[6]
 {¶ 61} "An affirmative defense is a new matter which, assuming the complaint to be true, constitutes a defense to it." State ex rel. PlainDealer Publishing Co. v. City of Cleveland (1996), 75 Ohio St.3d 31, 33.
 {¶ 62} MCIC requested, in pertinent part, that the court charge the jury that: "If an insured fails to comply with his duty to cooperate under a policy of insurance, then the insurer may not be liable under the policy. * * * If you find that Mr. Jay failed to provide necessary information to MCIC, you may find that he failed in his duty to cooperate with his claim. This lack of cooperation must result in a material and substantial prejudice to the insurance company * * *." (Defendant's Second Amended Jury Instructions, No. 9).
 {¶ 63} The trial court gave the following instruction: "The defendant claims that plaintiff has failed to perform obligations under the contract. In this the defendant has the burden to establish by a preponderance of the evidence that they were materially prejudiced thereby. * * * Both the plaintiff and the defendant have a duty to act in good faith with one another and you may consider their actions towards one another in your deliberations." (2-10-06 T.166, 167). Also, as noted earlier, the trial court instructed the jury that Jay's breach of the policy was an affirmative defense that was to be proven by MCIC by a preponderance of the evidence. *Page 17 
 {¶ 64} MCIC contends the instructions clearly were an improper statement of the law because a "party claiming insurance coverage has the burden of establishing compliance with all provisions of the insurance policy which are precedent to his right to recover," citing the decision of this Court in Henry v. Newby (June 3, 1996), 5th Dist. No. 95-CA-12, 1996 WL 363553, at *3.
 {¶ 65} First, we note the insurance policy does not place a burden on Jay to supply MCIC with "enough" information and to "cooperate" with MCIC, but to supply MCIC with notice and written proof in sufficient detail to describe the loss. Second, the jury interrogatories drafted by MCIC's counsel and submitted to the jury state: "Do you find by a preponderance of the evidence that Mr. Jay provided sufficient proof to MCIC at the time his claim was made * * *." (Defendant's Jury Interrogatories, Nos. 2, 4, 6, 8, 10, and 12). The jury responded "yes." Third, interrogatories were submitted to the jury, prepared by Jay's counsel, which asked:" * * * do you find by a preponderance of the evidence that defendant's breach excused plaintiff from performing his obligations under the contract." (Plaintiff's Jury Interrogatories No. 2). The jury responded "no." Lastly, the jury was asked:" * * *do you find that defendant suffered "material" and "substantial" prejudice through any alleged failure of plaintiff to perform his obligations, if any, under the contract?" Again, the jury responded "no."
 {¶ 66} Viewing the charge and interrogatories, as a whole, we conclude that there is no reasonable probability that the jury was confused or misled by that part of the court's instruction, even assuming error. See also, Rowley v. Ferguson (1942) 37 Ohio Law Abs. 531, 48 N.E.2d 243 (answers to interrogatories can cure erroneous special jury instruction). *Page 18 
 {¶ 67} Under the posture of this case, we find the jury instructions, viewed in their entirety, correctly adapt the law, fairly presented the case to the jury in such a way that injustice was not done to either party and provided the jury with sufficient guidance in reaching its verdict.
 {¶ 68} Accordingly, MCIC's first Assignment of Error is overruled.
 II. {¶ 69} MCIC next claims that a new trial should be granted because the trial court improperly submitted Plaintiff's Interrogatory No. 1 to the jury.
 {¶ 70} No. 1 states as follows: "Do you find by a preponderance of evidence that defendant, MCIC, directly or through its agents or employees, breached the insurance policies it executed with plaintiff by not approving any payment of benefits to plaintiff since October, 1998, based on defendant's determination that plaintiff is not `totally disabled' due to any illness, sickness, or concurrent disability or medical condition as identified in the policies?"
 {¶ 71} MCIC asserts the inclusion of the term "concurrent disability" was improper because MCIC had no obligation to assess benefits under the "CONCURRENT DISABILITIES" provision of the policy.
 {¶ 72} That provision states as follows: "Monthly benefits are not payable for two or more disabilities or losses at the same time. A period of disabilities or loss which results from more than one Injury, Sickness or medical condition shall be treated: (1) as a single period and (2) on the basis of only one monthly benefit being payable. Also, once a period disability starts it will be treated for purpose of this Policy: (1) as a single continuous period regardless of the number of initial, additional or subsequent Sickness, *Page 19 
Injuries or medical conditions which cause it to continue; and (2) such continuous period ends when you are no longer disabled from any and all such causes, as the case may be. No benefits are payable for any disability or loss due to Sickness or Injury which occurs during a period for which premiums are being waived under PART X of this policy on account of a prior Sickness or Injury."
 {¶ 73} MCIC further contends that the jury was led to believe it could assess liability based on the wrong contract definition and it was prejudiced thereby. We disagree.
 {¶ 74} Civ. R. 49(B) governs the use of interrogatories and reads in relevant part:" * * * [t]he court shall inform counsel of its proposed action upon the requests prior to their arguments to the jury, but the interrogatories shall be submitted to the jury in the form that the court approves. The interrogatories may be directed to one or more determinative issues whether issues of fact or mixed issues of fact and law."
 {¶ 75} The Supreme Court of Ohio, interpreting Civ. R. 49(B) has held that Civ.R. 49(B) "does not require the trial judge to act as a * * * mere conduit who must submit all interrogatories counsel may propose."Ziegler v. Wendel Poultry Serv., Inc. (1993), 67 Ohio St.3d 10, 15,615 N.E.2d 1022, citations omitted. "The court retains limited discretion to reject proposed interrogatories where they are ambiguous, confusing, redundant, or otherwise legally objectionable. Proper jury interrogatories must address determinative issues and must be based upon the evidence presented." Id. at 15.
 {¶ 76} Upon review, we do not find the wording of No. 1, including the term "concurrent disability," was misleading or legally objectionable. Contrary to MCIC's assertion, the term "concurrent disability" did not, in our view, misstate the contract. *Page 20 
The provision at issue could have served as a basis for not approving disability payments to Jay, as the contract provision limits MCIC's exposure for a claimant who suffers two or more disabilities at the same time, like Jay.
 {¶ 77} We therefore cannot find that the trial court abused its discretion in submitting Jay's No. 1 interrogatory to the jury. Even if error did occur, the jury was presented with Defendant's Interrogatory Nos. 1, 3, 5, 7, 9, and 11, which asked the jury if it found Jay was disabled due to a "sickness," as opposed to a concurrent disability, as covered by the policy. The jury stated "yes" to each question. We therefore find that any error in regards to Jay's No. 1 interrogatory was rendered moot by the jury's affirmative responses finding Jay had proven he was totally disabled due to a sickness.
 {¶ 78} Accordingly, MCIC's second Assignment of Error is overruled.
 III. {¶ 79} MCIC argues in its third Assignment of Error that the trial court erred in permitting Jay to testify regarding discovery requests served upon him during the litigation. In January 2001, MCIC reopened Jay's disability claim and began its investigation. Jay filed his lawsuit against MCIC in April 2001. While the lawsuit was proceeding, MCIC continued its investigation of the disability claim. John Graff, disability claims consultant for Disability Management Services (the third party administrator for MCIC) requested information from Jay in a letter dated January 24, 2002. Graff stated in the letter that Jay should submit information about his claim to counsel for MCIC. (1-31-06 T. 369). *Page 21 
 {¶ 80} At trial, Jay testified to the content of the MCIC's discovery requests under objection. MCIC also objected to the introduction of the January 24, 2002 letter as an exhibit. In overruling the objection, the trial court stated:
 {¶ 81} "In my judgment the Defendant is the architect of the problem that they now encounter with respect to the overlap of both the claim and the pending lawsuit. And it will be their opportunity to clear that matter up in cross-examination, but the fact of the matter is the Court will admit these — will be prepared to admit these exhibits in evidence in the case." (1-31-06 T. 381-382).
 {¶ 82} The admission or exclusion of evidence rests within the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173,510 N.E.2d 343. A reviewing court must not disturb a trial court's evidentiary ruling unless the ruling is found to be an abuse of discretion. Id., citing State v. Adams (1980), 62 Ohio St.2d 151, 157,404 N.E.2d 144. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Adams supra, at 157.
 {¶ 83} Upon a review of the record and the circumstances under which the discovery information was used for claim-processing purposes, we find the trial court did not abuse its discretion in overruling MCIC's objections. Moreover, the trial court instructed the jury on the difference between the breadth of discovery obtained for a lawsuit versus discovery of information for processing an insurance claim. We presume that the jury followed the court's instructions. State v.Loza (1994), 71 Ohio St.3d 61, 79, 641 N.E.2d 1082.
 {¶ 84} MCIC's third Assignment of Error is overruled. *Page 22 
 IV., IX. {¶ 85} We will address MCIC's fourth and ninth Assignments of Error together.
 {¶ 86} MCIC argues in its fourth Assignment of Error that the trial court erred in denying MCIC's motions for directed verdict and for judgment notwithstanding the verdict (JNOV) on the claims of bad faith and punitive damages. The jury found in favor of Jay on his claim of bad faith and awarded Jay $1,130,000 in compensatory damages and $3,000,000 in punitive damages.
 {¶ 87} An insurer owes a duty of good faith to its insured in the processing, payment, satisfaction, and settlement of the insured's claim. Tokles Son, Inc. v. Midwestern Idemnity Co. (1992),65 Ohio St.3d 621, 629, 605 N.E.2d 936 citing Hart v. Republic Mut. Ins.Co. (1949), 152 Ohio St. 185, 39 O.O. 465, 87 N.E.2d 347; Hoskins v.Aetna Life Ins. Co. (1983), 6 Ohio St.3d 272, 6 OBR 337,452 N.E.2d 1315; Staff Builders, Inc. v. Armstrong (1988), 37 Ohio St.3d 298,525 N.E.2d 783; Motorists Mut. Ins. Co. v. Said (1992), 63 Ohio St.3d 690,590 N.E.2d 1228. "An insurer fails to exercise good faith in the processing of a claim of its insured where its refusal to pay the claim is not predicated upon circumstances that furnish reasonable justification therefore." Zoppo v. Homestead Ins. Co. (1994),71 Ohio St.3d 552, paragraph one of syllabus, 644 N.E. 2d 397.
 {¶ 88} MCIC first contends the trial court erred in failing to grant its motions for directed verdict and JNOV because the evidence presented at trial was insufficient to support the verdict on Jay's bad faith claim. As stated earlier, our review of the motions is de novo. We review the motion for JNOV with the same test as applied for the directed verdict. Specifically, if there is evidence to support the nonmoving party's side *Page 23 
so that reasonable minds could come to differing conclusions, the court must deny the motion so as to not usurp the jury's function.
 {¶ 89} Upon review of the evidence developed in this nineteen day trial, we find there was sufficient evidence before the jury to support Jay's claim of bad faith so that reasonable minds could come to differing conclusions. The duty of good faith extends beyond those scenarios involving an outright denial of payment for a claim.Drouard v. United Services Auto. Assoc., 6th Dist. No. L-06-1275,2007-Ohio-1049 at ¶ 16 citing TOL Aviation v. Intercargo Ins. Co., 6th Dist. Nos. L-05-1308, L-06-1050, 2006-Ohio-6061, ¶ 50. Thus, even in cases where a claim is ultimately paid, "the insurer's foot-dragging in the claims-handling and evaluation process could support a bad-faith cause of action." Unklesbay v. Fenwick, 2nd Dist. No. 2005-CA-108,2006-Ohio-2630, ¶ 15; see also, Mundy v. Roy, 2nd Dist. No. 2005-CA-28,2006-Ohio-993 (finding a "refusal to pay" where insurer had disputed insured's alleged damages, rejected his settlement demands, and compensated him only after a jury rendered a verdict against it). Further, case law does not provide that simply employing and relying on an expert shields an insurer from a bad faith claim. Ullman v.Auto-Owners Mut. Ins. Co. (S.D. Ohio 2007), 502 F.Supp.2d 737, *3. "Reliance upon the expert must be reasonable and must provide reasonable justification for a denial of coverage." Id.
 {¶ 90} In this case, MCIC relied upon the findings of its medical doctors who opined regarding Jay's ability to work. MCIC repeatedly denied Jay's claim for disability coverage over the course of several years. MCIC also relied upon a purported failure of Jay to provide sufficient information to MCIC. Jay presented substantial evidence challenging both MCIC's manner of handling the claim and basis for denying the claim. *Page 24 
 {¶ 91} Construing the evidence most strongly in Jay's favor, Jay presented some evidence from which the jury could reasonably conclude that MCIC breached its duty of good faith.
 {¶ 92} MCIC also argues Jay failed to establish his damages. Jay testified during the bad faith phase of the trial as to the damages he suffered as a result of the denial of his disability claim. These damages stemmed from his inability to work, liquidating assets and borrowing money. After his testimony, counsel for MCIC waived its opportunity to cross-examine Jay. (2-16-06 T. 348). We find counsel had the opportunity to challenge Jay's calculation of damages upon cross-examination, but failed to do so. The jury was only left with Jay's evidence of damages upon which to makes its decision.
 {¶ 93} Related to the issue of damages, MCIC argues in its ninth Assignment of Error that the trial court should not have permitted Jay to testify about his economic damages because Jay withheld evidence of his damages during the discovery process.
 {¶ 94} The parties have been litigating this matter since 2001. The case was ready for trial three times and actually went to trial twice. The sheer volume of the record demonstrates that the parties left no discovery stone unturned. We find the trial court did not abuse its discretion in overruling MCIC's objection.
 {¶ 95} Finally, MCIC argues the trial court erred in granting its motions for directed verdict and JNOV on the punitive damages award. MCIC claims there was insufficient evidence to establish the requisite malice to support the punitive damages award. *Page 25 
 {¶ 96} The purpose of punitive damages is not to compensate a plaintiff, but to punish and deter certain conduct. Moskovitz v. Mt.Sinai Med. Ctr. (1994), 69 Ohio St.3d 638, 651, 635 N.E.2d 331. The Ohio Supreme Court explained how punitive damages should be looked at as follows:
 {¶ 97} "The focus of the award should be the defendant, and the consideration should be what it will take to bring about the twin aims of punishment and deterrence as to that defendant. We do not require, or invite, financial ruination of a defendant that is liable for punitive damages. While certainly a higher award will always yield a greater punishment and a greater deterrent, the punitive damages award should not go beyond what is necessary to achieve its goals. The law requires an effective punishment, not a draconian one." Dardinger v. Anthem BlueCross Blue Shield, 98 Ohio St.3d 77, 2002-Ohio-7113, 781 N.E.2d 121, at ¶ 178.
 {¶ 98} A jury may award punitive damages only upon a finding of actual malice. Calmes v. Goodyear Tire Rubber Co. (1991), 61 Ohio St.3d 470,473, 575 N.E.2d 416. "Actual malice" has been defined as "`(1) that state of mind under which a person's conduct is characterized by hatred, ill will or a spirit of revenge, or (2) a conscious disregard for the rights and safety of other persons that has a great probability of causing substantial harm. (Emphasis sic.).'" Id., quoting Preston v.Murty (1987), 32 Ohio St.3d 334, 512 N.E.2d 1174, syllabus. The amount of punitive damages awarded may be excessive when it is determined to have been the product of passion and prejudice. Villella v. WaikemMotors, Inc. (1989), 45 Ohio St.3d 36, 40, 543 N.E.2d 464. But as long as the punitive damages award is not the result of passion and prejudice *Page 26 
and is not the result of a legal error, generally it is not within the province of a reviewing court to substitute its view for that of the jury. Id.
 {¶ 99} Upon review of the record, the jury, having viewed the evidence and the credibility of the witnesses, determined Jay suffered compensable damages and punitive damages were warranted as a result of MCIC's actions. We find there was sufficient, competent credible evidence to support its verdict.
 {¶ 100} Accordingly, we overrule MCIC's fourth and ninth Assignments of Error.
 V. {¶ 101} MCIC argues in its fifth Assignment of Error that the trial court erred in allowing the expert testimony of Mary Fuller.
 {¶ 102} During the bad faith phase of the trial, Jay presented the testimony of Mary Fuller, an expert in the area of disability litigation. Prior to trial, however, Fuller's participation in this case as Jay's expert had been in dispute. The dispute culminated in Fuller being unable to render her final expert opinion at the time of the summary judgment motions. At trial and over MCIC's objection, Fuller's deposition was read before the jury. MCIC's cross-examination of Fuller was read to the jury as well.
 {¶ 103} MCIC's specifically argues the trial court erred when it permitted Jay to present Fuller's testimony regarding her opinion in this matter when Fuller stated that she never finalized her opinions because she lacked information from Jay. As previously stated, the admission or exclusion of evidence rests within the sound discretion of the trial court. State v. Sage (1987), 31 Ohio St.3d 173,510 N.E.2d 343. A reviewing court must not disturb a trial court's evidentiary ruling unless the ruling is found to be an abuse of discretion. Id., citing State v. Adams (1980), *Page 27 62 Ohio St.2d 151, 157, 404 N.E.2d 144. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Adams supra, at 157.
 {¶ 104} Upon review of Fuller's testimony, we find the trial court did not abuse its discretion when it permitted Fuller to testify. We find MCIC developed its arguments upon the cross-examination of Fuller. It was the purview of the jury then to determine Fuller's credibility and the weight to give her testimony.
 {¶ 105} MCIC's fifth Assignment of Error is overruled.
 VI. {¶ 106} MCIC argues in its sixth Assignment of Error that the trial court erred in failing to intervene during Jay's closing remarks. MCIC lists at least five improper statements made by Jay's counsel during closing arguments. We must note that counsel for MCIC did not object to any of these specific statements during closing argument. MCIC did make one objection regarding counsel's explanation to jury about how it should measure the amount of punitive damages to award. (2-16-06 T. 462). As this argument is not before the Court, we must review the remaining improper statements under the plain error doctrine.
 {¶ 107} "A `plain error' is obvious and prejudicial although neither objected to nor affirmatively waived which, if permitted, would have a material adverse affect on the character and public confidence in judicial proceedings." Schade v. Carnegie Body Co. (1982),70 Ohio St.2d 207, 209, 436 N.E.2d 1001. We conclude that none of the statements made by counsel for Jay rose to the level of plain error. *Page 28 
 {¶ 108} We further find the trial court correctly instructed the jury that the comments of lawyers, questions, objections, and arguments are not evidence in the case. We again presume that the jury followed the court's instructions. State v. Loza (1994), 71 Ohio St.3d 61, 79,641 N.E.2d 1082.
 {¶ 109} MCIC's sixth Assignment of Error is overruled.
 VII. {¶ 110} MCIC argues in its seventh Assignment of Error the trial court erred in allowing the testimony of Arthur Fries, a witness for Jay.
 {¶ 111} During the bad faith phase of the trial, Jay called Arthur Fries to testify. Fries is the disability claim consultant Jay hired in January 1999 to investigate his disability claim with MCIC. Jay did not call Fries as an expert.
 {¶ 112} MCIC specifically objects to the trial court allowing the following testimony:
 {¶ 113} "Q. Are you mindful that insurance companies generally or in some states have duties of good faith?
 {¶ 114} "A. Yes.
 {¶ 115} "Q. Did you think there was a reasonable basis to deny Mr. Jay's claim at that time?
 {¶ 116} "A. No." (2-15-06 T. 85).
 {¶ 117} At trial, MCIC objected to this testimony arguing that Fries was permitted to render an opinion on the ultimate issue in the case without being qualified as an expert. The trial court overruled the objection, finding Fries testified as a lay person. (2-15-06 T. 187-188). *Page 29 
 {¶ 118} As stated above, the admission or exclusion of evidence rests in the sound discretion of the trial court. Relevant evidence is generally admissible and is defined as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Lay opinion testimony is admissible if it satisfies the requirements of Evid.R. 701. "If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Evid. R. 701. Furthermore, "[t]estimony in the form of an opinion or inference otherwise admissible is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact." Evid. R. 704.
 {¶ 119} In this case, Fries testified that he was hired by Jay to aid Jay with his disability claim. He examined Jay's disability policy, reviewed documentation sent by Jay and Jay's law associate, spoke with his contact at MCIC, and finally wrote a letter to MCIC on Jay's behalf regarding Jay's claim. Based upon Fries' letter, MCIC reopened Jay's claim. Fries' opinion was based upon his own observations, in light of the facts known to him at that time. We find said opinions qualified under Evid.R. 701 and Evid.R. 704.
 {¶ 120} MCIC's seventh Assignment of Error is overruled. *Page 30 
 VIII. {¶ 121} MCIC next argues the trial court erred in allowing the testimony of Dr. Milan Dopirak regarding Jay's cardiac condition during the second phase of the trial on the bad faith claim. Dr. Dopirak was Jay's treating cardiologist and friend. He testified that although Jay had a good recovery from his heart surgery, Jay suffered from depression.
 {¶ 122} As previously stated, the admission or exclusion of evidence rests within the sound discretion of the trial court. State v. Sage
(1987), 31 Ohio St.3d 173, 510 N.E.2d 343. A reviewing court must not disturb a trial court's evidentiary ruling unless the ruling is found to be an abuse of discretion. Id., citing State v. Adams (1980),62 Ohio St.2d 151, 157, 404 N.E.2d 144. An abuse of discretion connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. Adams supra, at 157.
 {¶ 123} Upon a review of the testimony of Dr. Dopirak, we find the trial court did not abuse its discretion in overruling MCIC's objection to his testimony.
 {¶ 124} MCIC's eighth Assignment of Error is overruled.
 X. {¶ 125} MCIC argues in its final Assignment of Error that the trial court awarded prejudgment interest at the wrong statutory rates. At oral argument, counsel for Jay stipulated that the rate the trial court set for the prejudgment interest was incorrect.
 {¶ 126} We find the proper interest rate from March 5, 2004, through June 2, 2004, was 10% under the prior version of R.C. 1343.03(A); 4% for the remainder of 2004; and 5% for 2005. *Page 31 
 {¶ 127} MCIC's tenth Assignment of Error is sustained.
 {¶ 128} Pursuant to App.R. 12(B), this Court orders that prejudgment interest be awarded upon the jury's bad faith damage award of $1,130,000 at the statutory interest rate of 10% for the period of March 5, 2004, through June 2, 2004; 4% for the remainder of 2004; and 5% for 2005; and at the appropriate statutory rates thereafter.
 {¶ 129} For all the foregoing reasons, the judgment of the Stark County Court of Common Pleas is hereby affirmed in part; reversed in part; and final order entered on prejudgment interest.
 Delaney, P.J., Reader, V.J. and Boggins, V.J. concur. *Page 32 
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion on file, the judgment of the Stark County Court of Common Pleas is AFFIRMED IN PART AND REVERSED IN PART.
According to this Court's ruling in Assignment of Error X and pursuant to App.R. 12(B), this Court hereby orders that prejudgment interest be awarded upon the jury's bad faith damage award of $1,130,000 at the statutory interest rate of 10% for the period of March 5, 2004, through June 2, 2004; 4% for the remainder of 2004; and 5% for 2005; and at the appropriate statutory rates thereafter.
Costs assessed to appellant.
[4] In deciding the post-trial motions, the trial judge described the history of this case as "torturous" and noted the contempt between the parties and "offensive posturing" of their counsel throughout the trial. Upon review of the voluminous record, we cannot say the trial judge overstated his observations of this case.
[5] The trial court adopted this instruction from Jay's Proposed Jury Instruction, p 5-6. MCIC did not specifically object to this instruction at trial, but now argues on appeal the trial court improperly permitted the jury to interpret or construe the contract. However, in the absence of a specific objection, MCIC may not assign as error the giving of this instruction. Civ. R. 51(A). This applies equally to MCIC's claim of error regarding the trial court's instruction that "[a] material breach of the contract by the defendant excuses nonperformance by the plaintiff thereafter in his contractual obligations." (2-13-06 T. 166). No timely objection was made by MCIC to this instruction; therefore, it cannot be challenged on appeal.
[6] MCIC claims prejudice is presumed when an insured fails to provide proof of loss, citing Ferrando v. Auto-Owners Mutual InsuranceCompany, 98 Ohio St.3d 186, 2002-Ohio-7217. However, we findFerrando to be distinguishable. The Ferrando court held that an insured's breach of notice and consent-to-settle and other subrogation issues presumably prejudices an insurer, neither of which is at issue in this case. *Page 1